PARKERSBURG IRON & STEEL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13876.   Promulgated August 6, 1929.

*W. W. Spalding, Esq.*, for the petitioner.
*Maxwell E. McDowell, Esq.*, and *F. B. Schlosser, Esq.*, for the respondent.

OPINION.

MARQUETTE: Petitioner complains of the respondent's action in disallowing as a deduction for 1918 an alleged loss of $2,708, representing the difference between the cost to petitioner of the Second and Third Liberty Loan bonds distributed to stockholders in payment of the February 25 and July 22 dividends, and the estimated fair market value thereof at the dates of distribution. The dividend of February 25, at the rate of $12\frac{1}{2}$ per cent, and that of July 22, at the rate of 7 per cent, amounted to $50,000 and $28,000, respectively. Following the dividend declarations of February 25, and of July 22, and on the due dates for the payment of the dividends, the petitioner became indebted to its stockholders in the sums of $50,000 and $28,000, respectively. Both of these obligations were liquidated and settled in accordance with the terms of the declaratory resolutions, the first, by distributing to the stockholders Second Libery Loan bonds of a par value of $48,750, and cash of $1,250, and the second, by distributing to the stockholders Third Liberty Loan bonds of a par value of $26,500, and cash of $1,500. The bonds so distributed to the stockholders had been acquired by the petitioner at a price equivalent to their par value. Thus the petitioner acquired and disposed of the bonds at the same price and, under those circumstances, it suffered no loss. What the prevailing market prices may have been on stock and bond exchanges, at the dates of disposition, is not material. One may dispose of property for more or less than its fair market value. The decisive factor in the determination of whether one derives a gain or sustains a loss in a particular transaction, is the consideration received for parting with the subject matter. Here, in exchange for bonds for which it had paid a

price equivalent to par, the petitioner received a cancellation of its indebtedness to stockholders equivalent, in amount, to the par value of the bonds. The case of *Callanan Road Improvement Co.*, 12 B. T. A. 1109, upon which the petitioner relies, is not in point. In that case, Liberty bonds were distributed to stockholders in payment of a dividend, at their fair market value, which was less than cost. The two cases are not analagous. We find no error in the respondent's action of which the petitioner complains.

Petitioner alleges that respondent erred in disallowing the deduction as an ordinary and necessary expense, for 1918, of the cost, $11,210.88, of the alterations and changes made in the factory building in that year. Upon the record before us we entertain no doubt that the expenditures incident to making such alterations and changes are of a capital nature, and that the respondent correctly disallowed the item in question as a deduction from gross income. Various reasons are suggested by the petitioner as the basis for the allowance of the disputed item, none of which appeal to us as proper grounds for the action sought to be taken. It is contended that the making of the alterations was an involuntary act, done upon orders of engineers of the Army; that neither the efficiency, productivity, nor the value of the plant has been increased by virtue of the alterations; and that the petitioner has been placed at a decided disadvantage in making the alterations, by reason of having to provide additional storage space and of the cramped and congested operating conditions existing in the building because of the removal of all of the machinery to one floor. Assuming all such conditions and circumstances to be true, and we do not decide that they are, we still adhere to the conclusion already announced. It is undenied in the record that the general purpose for which these alterations and changes were made, the general improvement of lighting conditions in the building, has been accomplished, although, perhaps, not to the degree expected or hoped for. Furthermore, all such alterations and changes have been continued in use throughout all of the taxable years on appeal, and the record contains no hint of any subsequent abandonment. We find no error in the action of the respondent in disallowing the cost of the alterations and changes as a deduction from gross income for 1918.

In 1918 the engine in petitioner's bar mill " blew up " or " smashed through itself," carrying to destruction much of the coupling pinions and gears, due to strains of war work and forced production in excess of rated or safety capacity. The petitioner expended the sum of $9,354.59 in cleaning up the wreckage in the bar mill, and in tearing down an engine in the sheet mill and installing it in the bar mill. This item, with that of $11,210.88 disposed of in the preceding paragraph, is represented in the sum of $20,565.47 referred to in the

second assignment of error. In our opinion this item of $9,354.59 constitutes an ordinary and necessary expense of the business, and the respondent erred in disallowing it as a deduction from gross income of 1918.

At the hearing the third assignment of error, relating to the deduction for 1918 of amortization of war facilities, was abandoned, and the petitioner substituted therefor a claim for a loss deduction of $4,570.45, representing the cost of certain items of plant equipment acquired in 1918 and alleged to have been abandoned in the same year. The amount claimed as a deduction is made up of the following expenditures: For special equipment for painting and drying sheets, $2,946.24; for special stovepipe machinery, $537.78; for one set of bending rolls, $800; for installation of flood lights on premises, $286.43. All of this equipment, except flood lights, was acquired and installed for the prosecution of work under Government war contracts. Shortly after the Armistice, these contracts were canceled and this special equipment, unsuitable to the normal peace-time operations of petitioner's business, was abandoned and scrapped—" thrown in the graveyard," as the witness stated. Petitioner is clearly entitled to a loss deduction for 1918 of $4,284.02, representing the cost of special equipment for painting and drying sheets, of special stovepipe machinery, and of one set of bending rolls, all of which equipment was abandoned and scrapped in that year. As to the flood lights, seven in number, installed on the premises for the purpose of protection against unauthorized trespassers, it appears that five have been occasionally used subsequent to 1918. Therefore, no loss deduction seems proper in respect of these lights on the ground of abandonment. Circumstances would indicate that this facility is within the statutory provisions relating to the amortization of war facilities; but the petitioner abandoned all claim to amortization of war facilities, and that action was taken after proof was placed in the record that it had not made claim for amortization within the time prescribed by statute.

In determining, for invested capital purposes, the amount of earnings available for distribution at the dividend dates of March 31 and July 31, 1918, the respondent deducted a tentative tax of $69,092.65. This action of the respondent is contrary to the decision of this Board in *L. S. Ayers & Co.*, 1 B. T. A. 1135, and is in error. See, also, *Commissioner* v. *Pittsburgh Knife & Forge Co.*, 30 Fed. (2d) 522; *Blair* v. *Ragley Lumber Co.*, 30 Fed. (2d) 683.

Proper adjustments of invested capital for 1920, on account of income and profits taxes for 1918 and 1919, will be made under Rule 50, when the correct tax liability for each of those years has been redetermined in accordance with this decision.

Respondent's motion to dismiss as to 1919, on the ground that no deficiency has been determined for that year, is granted upon the authority of *Cornelius Cotton Mills*, 4 B. T. A. 255.

*Judgment will be entered under Rule 50.*