AMSTERDAM THEATRES CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 43624.   Promulgated December 17, 1931.

*J. M. Kelly, Esq.*, for the petitioner.
*B. M. Coon, Esq.*, for the respondent.

1164

OPINION.

McMAHON: It is alleged that the respondent erred in disallowing as a deduction in each of the years 1925 and 1926, an amount of $5,000, representing exhaustion of a Keith franchise valued at $50,000, for which stock was issued. Section 234 (a) (7) of the Revenue Act of 1926 provides:

SEC. 234. (a) In computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

\*      \*      \*      \*      \*      \*      \*

(7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade of business, including a reasonable allowance for obsolescence.

Section 204 (a) of the Revenue Act of 1926 provides as follows:

SEC. 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—[Exceptions not material.]

Section 204 (c) of the Revenue Act of 1926 provides:

SEC. 204. (c) The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as is provided in subdivision (a) or (b) for the purpose of determining the gain or loss upon the sale or other disposition of such property, except that—[Exceptions not material.]

It will be seen from the above statutes that the basis to be used in the allowance of depletion, exhaustion, wear and tear is the cost of such property to the taxpayer. In the instant proceeding witnesses for the petitioner gave opinion testimony as to the value of the franchise in question as of the date it was acquired by the petitioner, but we must, if possible, determine its cost to petitioner. From the evidence it appears that petitioner acquired this franchise in consideration of its issuance of capital stock, and the burden is upon petitioner to show the value of the stock issued, or, in other words, the cost of the franchise. There is some evidence in the record as to sales of stock of petitioner upon which a valuation per share of the stock of petitioner might be based, but from the evidence it is impossible to determine the number of shares or amount of stock issued for the franchise. It will be readily seen that since we can not

determine the value of all of the stock, which was the consideration for the franchise, or the cost of the franchise, we are unable to determine the basis upon which exhaustion deductions are properly allowable.

Leslie E. Thompson, president of the petitioner, testified at the hearing that 1,480 shares of stock of the petitioner were issued to him and his associates for the franchise and whatever labor he and his associates performed in obtaining the lease and certain personal property appertaining to some theatres. However, the minutes of a meeting of the board of directors of the petitioner held on March 29 and 31, 1921, state that such 1,480 shares of capital stock of petitioner were to be issued " as full payment for said property and financing good will, leases, franchises and business." Furthermore, statements made by Thompson in a protest filed with the respondent on December 20, 1926, indicate that $15,000 par value of petitioner's capital stock was issued for the Keith franchise and certain personal property. Since the petitioner has not shown the basis to be used in the determination of exhaustion deductions, the respondent's determination in this regard must be approved. See *Conley Tin Foil Corporation*, 17 B. T. A. 65.

The petitioner also contends that the respondent erred in disallowing as deductions in the year 1925 the amounts of $2,114.17 and $2,419. The former amount was spent in 1925 upon the Strand Theatre, principally for putting in new supports for the floor in place of those supports which had rotted out. This expenditure also covered amounts for removing ashes from the cellar, but there is no allocation of the amounts spent for each purpose. In his direct examination Thompson testified that the amount of $2,419 was expended for repairs upon the Rialto Theatre. However, in his cross-examination it developed that this expenditure was made for renovating the roof of the Strand Theatre. This work consisted of rebuilding about 40 or 50 per cent of the roof and covering it with tar paper. The Strand Theatre was not owned by petitioner, but was leased for a period of 10 years from March 25, 1921, or thereabouts. The evidence discloses that the useful life of these improvements would extend at least to the date of the expiration of the lease.

Section 234 (a) (1) of the Revenue Act of 1926 provides:

Sec. 234. (a) In computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

(1) All the ordinary and necessary expenses paid' or incurred during the taxable year in carrying on any trade or business, * * *

Section 215 (a) (2) of the Revenue Act of 1926 provides:

Sec. 215. (a) In computing net income no deduction shall in any case be allowed in respect of— .

(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate.

See also section 235 of the Revenue Act of 1926.

Can it be said that these expenditures constituted ordinary and necessary expenses incident to the petitioner's business? We believe not.

In *Black Hardware Co.*, 16 B. T. A. 551, there was involved a somewhat similar situation. There the taxpayer had made expenditures to raise its floor level. In disallowing a claimed deduction on account of such expenditure in that case, it was said:

The allocation of expenditures of the kind under consideration, as between capital and current expense accounts, often presents more difficulties in practice than in theory, for the reason that the line between repairs and maintenances, and betterments and improvements, is shadowy and indistinct. However, we are satisfied that the expenditures in question should be capitalized. It appears to be clearly established by the evidence that they did not prolong the life of the petitioner's building, and there is testimony to the effect that they did not increase its value, although it seems unreasonable that a building so located as to be free from the menace of storms and floods is not more valuable than the same building, or the same kind of building, not so favorably situated. However, conceding that they did not prolong the life of the building, and assuming that they did not increase its value, they nevertheless were for alterations which were, as we conceive them, permanent betterments and improvements that rendered the building better suited to the purpose for which it was used. * * *

*Black Hardware Co.*, *supra*, was affirmed in *Black Hardware Co.* v. *Commissioner*, 39 Fed. (2d) 461; certiorari denied, 282 U. S. 84.

See also *News Leader Co.*, 18 B. T. A. 1212; *Crocker First National Bank of San Francisco*, 22 B. T. A. 1159; and *Parkersburg Iron & Steel Co.*, 17 B. T. A. 74; affirmed in *Parkersburg Iron & Steel Co.* v. *Burnet*, 48 Fed. (2d) 163.

The case of *E. L. Potter*, 20 B. T. A. 252, cited by petitioner is not in point. In that case it did not appear that the expenditures in question resulted in a permanent betterment or improvement, extending beyond the taxable year in question.

The determination of the respondent will not be disturbed.

*Judgment will be entered for the respondent.*