FIRST NATIONAL BANK IN MOBILE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 63732.  Promulgated May 2, 1934.

*Geo. E. H. Goodner, Esq.,* and *W. K. Smith, Esq.,* for the petitioner.

*Thomas F. Callahan, Esq.,* for the respondent.

OPINION.

LANSDON: The respondent has determined a deficiency in income tax for the year 1929 in the amount of $599.75. The petitioner is a national banking corporation, with its principal office at Mobile, Alabama. The issues are: (1) Insufficient depreciation allowance on an annex to its bank building constructed in 1929; (2) erroneous computation of allowance for depreciation of its mechanical equipment; (3) disallowance by respondent as ordinary expense of an amount alleged to have been expended for necessary repairs on its old bank building; (4) disallowance of deduction representing certain donations; and (5) overstatement of profit realized from the sale of securities in 1929. It introduced no evidence in support of its second contention and at the hearing the respondent admitted error as to the fifth cause of action. Accordingly, the respondent is affirmed in his determination as to the depreciation of petitioner's mechanical equipment in 1929, and is reversed in the matter of profits from the sale of securities in the same year, which reduces the petitioner's profit thereon in the amount of $3,976.41. This leaves for our consideration only alleged errors (1), (3), and (4).

The annex to petitioner's bank building was completed late in 1929. It is a steel and concrete eight-story office building which the respondent has determined has a useful life of 50 years, and upon which a depreciation deduction for the last two months of the taxable year, based on a rate of 2 percent per annum has been allowed in the amount of $1,866.33. Petitioner contends that the useful life of the building is not in excess of 40 years and asks for depreciation allowance at a rate not less than 2½ percent per annum.

This contention is based on section 23 (k) of the Revenue Act of 1928.[1] This Board and the courts have many times held that depreciation, including obsolescence, is a matter of fact to be established by evidence.

In support of its contention for a higher rate of depreciation, petitioner introduced three witnesses. Its vice president testified that the erection of the annex and of a new building just across the street by the Merchant's Bank caused the loss of a number of tenants of its old building and that, in his opinion, the erection of new office buildings in the future would shorten the economic life of the annex. The operating manager of the building in question testified that in his opinion the economic useful life of such buildings erected in 1929, or earlier, is not more than 35 years. He based his opinion on his knowledge of improvements in the construction of office buildings that are constantly being made. He enumerated improved high-speed elevators and heating and air-conditioning systems as being placed in new buildings, which cannot be economically installed in completed structures. To the same effect was the testimony of an architect in no way connected with the petitioner and also that of the architect who designed and supervised the construction of the building here involved. The respondent adduced no evidence on this point.

It is now generally known that the economic usefulness of office buildings is shorter than their physical life. In a similar controversy in *Robert H. McCormick*, 2 B.T.A. 430, where the respondent disallowed petitioner's claim for a 40-year useful life on office buildings in Chicago, the Board overruled his determination and allowed the computation of depreciation on the basis of 40 years of useful life. In our opinion petitioner's allowance for depreciation, including obsolescence, in the building here involved, should be made on the basis of 40 years of economic useful life. *Central Savings Bank*, 10 B.T.A. 1408; *United Business Corp. of America*, 19 B.T.A. 809. Cf. *Burnet* v. *Niagara Falls Brewing Co.*, 282 U.S. 648.

The first section of the old bank and office building of the petitioner was erected in 1903, the second in 1913. In 1928 a fire in that building disclosed the necessity for somewhat extensive replacements

---

[1] SEC. 23. (k) *Depreciation.*—A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. In the case of property held by one person for life with remainder to another person, the deduction shall be computed as if the life tenant were the absolute owner of the property and shall be allowed to the life tenant. In the case of property held in trust the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each.

in the electrical wiring system made in 1929 at a cost of $4,907.18, which amount the petitioner deducted from its gross income in that year as an ordinary and necessary expense. Such deduction was disallowed by the respondent, who held that the amount claimed was a capital expenditure. The evidence indicates that the expenditure in question was incurred in the installation of a completely new assemblage of electrical equipment. The old wiring and material had been used for 15 years before any necessity for other than ordinary repairs was discovered. In our opinion the replacement of the old wiring and other equipment was not for incidental repairs, but was in the nature of an additional capital expenditure which the petitioner is entitled to recover ratably over the remaining useful life of the building. On this issue the determination of the respondent is affirmed. *Parkersburg Iron & Steel Co.*, 17 B.T.A. 74; affd., 48 Fed. (2d) 163; *Lycoming Silk Co.*, 11 B.T.A. 523.

In the taxable year the petitioner made contributions and donations as follows:

| Check dated | Payable to— | Purpose of donation | Amount |
|---|---|---|---|
| 1929 | | | |
| 1- 5-29 | Mobile Police Relief Assn | Donation for ball, order Mr. Bestor | $10. 00 |
| 1-17-29 | Gen. W. L. Sibert, Chairman | Contribution exp. Mobile National Winter Fox Hunt. | 100. 00 |
| 1-22-29 | Leinkauf P.T.A | Donation by order Mr. McAuley | 5. 00 |
| 1-23-29 | Negro Welfare Public Work | Negro welfare and public works | 5. 00 |
| 1-30-29 | Mobile Carnival Assn | Donation, order Mr. Bestor | 150. 00 |
| 1-31-29 | Community Chest of Mobile | First installment on $4,500 pledge for 1929 | 1,125. 00 |
| 2- 7-29 | Sisters of the Holy Ghost | | 5. 00 |
| 2- 8-29 | Mobile Chapter United Daughters of the Confederacy. | Donation by order Mr. Bestor | 10. 00 |
| 2-21-29 | Mobile Unity Center | Donation by order Mr. Bestor | 5. 00 |
| 2-28-29 | Mrs. Oliver H. Powell | Donation Mobile Symphony Orch | 5. 00 |
| 3- 4-29 | Paying Teller #8 | 10 Tickets Firemen's Ball | 10. 00 |
| 3- 6-29 | Franklin St. Baptist Church | Donation by order Mr. Bestor | 5. 00 |
| 3-14-29 | Sisters of the Holy Ghost | Easter donation | 5. 00 |
| 3-20-29 | American Red Cross | Donation flood relief | 1,000. 00 |
| 3-28-29 | Sisters of the Holy Ghost | Easter donation | 5. 00 |
| 3-30-29 | Paying Teller #8 | Tickets Firemen's Uniform Fund | 10. 00 |
| 4-19-29 | Rev. W. H. Hafner | Our donation to conv. of Walther League | 10. 00 |
| 4-19-29 | Police Uniform Fund | Donation order Mr. Woolf | 10. 00 |
| 4-29-29 | Paying Teller #8 | 7 tickets to A.B.L.S. Crystal Ball | 5. 25 |
| 4-30-29 | Paying Teller #8 | 2 Tickets for St. John's Church vaudeville | . 50 |
| 5- 1-29 | St. Patrick's School | Donation | 5. 00 |
| 5- 3-29 | Paying Teller #8 | Donation Cathedral lawn party | 10. 00 |
| 5- 4-29 | St. John's Episcopal Church | Donation | 5. 00 |
| 5- 6-29 | M. & O. Employees Annual Picnic | Donation | 25. 00 |
| 5- 7-29 | E. D. Flynn, Chairman | Trapshooters Conv | 50. 00 |
| 5- 9-29 | Sisters of Holy Ghost | Donation | 5. 00 |
| 5-13-29 | Community Chest of Mobile | Second installment on yearly pledge | 1,125. 00 |
| 5-14-29 | Paying Teller #8 | Tickets Police Uniform Fund, $5; Sisters of Mercy, $5; Boy's Industrial School, $2; Baptist Church of Prichard, $3. | 15. 00 |
| 5-22-29 | Rev. Geo. Mueller | Bayou La Batre Church | 5. 00 |
| 5-28-29 | Mobile County Tr. School | Donation | 10. 00 |
| 5-30-29 | Sisters of Holy Ghost | Donation | 5. 00 |
| 5-31-29 | Paying Teller #8 | Prize given at St. John's Church | 1. 00 |
| 6- 7-29 | Spring Hill College | Bldg. & Endowment Fund, seventh installment of $7,500 pledge. | 750. 00 |
| 6-20-29 | Colored Masonic Fraternity | Donation | 8. 00 |
| 7- 3-29 | Sisters of Holy Ghost | Donation | 5. 00 |
| 8- 8-29 | Whistler, P.T.A. | Donation | 5. 00 |
| 8-14-29 | Paying Teller #8 | Old Land Mark Association | 1. 00 |
| 8-17-29 | Mobile Clearing House Assn | Donation American Legion Conv | 245. 00 |
| 8-28-29 | Sisters of Holy Ghost | Donation | 5. 00 |
| 9-13-29 | Paying Teller #8 | Tickets Elks Frolic | 1. 00 |
| 9-20-29 | Girls Detention Home | Radio Fund | 5. 00 |
| 10-12-29 | Paying Teller #8 | Donation to English Lutheran Church of Theodore. | 5 00 |

| Check dated | Payable to— | Purpose of donation | Amount |
|---|---|---|---|
| 10–15–29 | Sec. Fireman's Ben. Assn | Pages adv. 1 year in this book | $5.00 |
| 10–15–29 | Paying Teller #8 | 30 tickets Cent. Baptist Church | 3.00 |
| 10–30–29 | Community Chest of Mobile | Final installment on $4,500 pledge | 1,125.00 |
| 11– 9–29 | Sisters of Holy Ghost | Davis Ave. X-mas donation | 5.00 |
| 11–12–29 | Sisters of Holy Ghost | Dearborn St. X-mas donation | 5.00 |
| 11–14–29 | Modern Educational & Religious Bureau, Inc. | Donation | 10.00 |
| 11–29–29 | T. B. & Health Assns | Donation | 10.00 |
| 12– 9–29 | Little Sisters of Poor | X-mas donation | 25.00 |
| 12–14–29 | Drum & Bugle Corps, Mobile Fire Department. | Donation | 10.00 |
| 12–17–29 | F. C. Thomson | Ladies of Charity X-mas tree fund | 5.00 |
| 12–20–29 | Spring Hill College | Endowment Fund, Eighth installment of $7,500 pledge. | 750.00 |
| 12–20–29 | Dorcas Charities | X-mas tree—Negro children | 5.00 |
| 12–27–29 | Rev. U. J. Robinson | Annual X-mas dinner, Mer. & Bus. Men | 100.00 |
| | Total | | 7,954.75 |

Petitioner contends that all the donations set out above are deductible from income in 1929 as ordinary and necessary expenses. To prevail on this issue it must show that they were paid out for necessary purposes of its business. E. G. McCauley, an active vice president of the petitioner, testified as to the purposes for which the larger contributions were made. His evidence may be summarized as follows: Gifts to the Community Chest of Mobile doubtless added to the good will which petitioner enjoyed in that city. Such contributions are necessary in order to retain business and to assist in securing new clients. The contribution to secure a meeting of the American Legion Convention in Mobile, in the amount of $245, was made for the purpose of securing more business. Spring Hill College is a Catholic educational institution located in Mobile, which has a large Catholic population, many of whom, as well as the college, are customers of the petitioner. The amount of $1,000 contributed to the American Red Cross was in response to an emergency call for flood relief in Southern Alabama, in a district in which the petitioner had many customers. The testimony is that refusal to make this donation would have aroused resentment among the customers of the bank and would have caused more criticism than failure to make any other contribution on the list.

In *Adam, Meldrum & Anderson Co.*, 29 B.T.A. 419, the Board considered claims for deductions very similar to the contentions of the petitioner. In our report therein, we said:

It is our opinion that contributions of this character do not fall within the classification of "ordinary and necessary expenses" as that phrase is used in the revenue laws, unless it is clearly shown that the expenses bear some direct relation to petitioner's business. They rather fall within the charities enumerated in section 23·(n) of the Revenue Act of 1928. Congress has provided that such expenditures are, within certain limitations, deductible by individual taxpayers, but not by corporations. Such contributions if made public may have some advertising value, but they can hardly be classed as "ordinary and necessary" expenses of advertising. The respondent is sustained as to this issue.

In *Welch* v. *Helvering*, 290 U.S. 111, the Supreme Court, speaking through Mr. Justice Cardozo, said:

Unless we can say from facts within our knowledge that these are ordinary and necessary expenses according to the ways of conduct and forms of speech prevailing in the business world the tax must be confirmed. But nothing told us within this record or within the sphere of our judicial notice permits us to give that extension to what is ordinary and necessary.

While the *Welch* case did not involve contributions, it did require a definition of the statutory concept of " ordinary and necessary expenses." There is nothing in the record upon which we can base a finding that the contributions in question were such expenditures as are commonly regarded either as ordinary or necessary in the conduct of a business. The testimony is that some of the gifts could not have been denied without provoking resentment on the part of customers of the bank, but there is no evidence that any of the beneficiaries of the petitioner's largess increased their volume of business with the bank by reason thereof or that any would have discontinued their business relations with the petitioner had any or all the contributions been withheld. There is no showing that petitioner was directly benefited by the donations claimed. In this situation the deductions claimed must be denied.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

GOODRICH concurs in the result.

SMITH dissents on the question of donations.