ESTATE OF GEORGE H. LETZ, SR., DECEASED, GEORGE H. LETZ, JR., EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE. RESPONDENT.

Docket No. 99940. Promulgated December 16, 1941.

*R. L. P. Wallace Esq.*, and *Joseph W. Zeller, Esq.*, for the petitioner. *Clay C. Holmes, Esq.*, for the respondent.

1012

OPINION.

KERN: As previously stated, the sole issue for our determination is whether the Commissioner correctly included within the taxable income of decedent for the period January 1 to February 25, 1936 (the date of his death), the total of certain amounts credited to decedent on the books of the Letz Manufacturing Co. prior to January 1, 1936, which credits were evidenced by negotiable notes payable on demand then held by decedent. As set forth in our findings of fact, part of this amount was attributable to back salary and interest thereon and the remaining $1,500 was by reason of a credit inherited from the estate of decedent's sister.

At all times, except for a period of a few months in 1935, the amounts of these notes were subject to decedent's demand for payment. The testimony of the manager of the Port Authority Branch of the National City Bank and John H. Letz, a responsible officer of the Letz Manufacturing Co., as supplemented by the books of that company, has convinced us that the notes held by decedent were at all times worth their face amount and could have been paid by the company on decedent's demand at any time up until the date of his death, except for a short restricted period in 1935 not deemed material.

Petitioner, therefore, urges us to find that the various amounts credited to his decedent were constructively received by him in the years when first credited to his account. This doctrine of constructive receipt is of importance only where taxpayers keep their books and report their income on a cash receipts and disbursements basis. If a certain income is made subject to his unqualified control within a taxable year, we say that that income was received by the taxpayer within the taxable year even though not reduced to possession until

a later date. In the instant case the decedent could have had receipt upon demand. The corporation was solvent. Therefore, if the respondent had determined that decedent had constructively received from the corporation the amounts called for by the several notes in the years of their respective issue, we would have perforce sustained such a determination. *John A. Brander*, 3 B. T. A. 231; *Chester M. Curry*, 3 B. T. A. 237; *John I. Chipley*, 25 B. T. A. 1103; *Corliss* v. *Bowers*, 281 U. S. 376.

However, because of the latent equitable character of this doctrine of constructive receipt, we doubt whether under the circumstances of this case, petitioner can invoke its application. *Alice H. Moran, Executrix*, 26 B. T. A. 1154; affd., 67 Fed. (2d) 601.

We do not labor this point, for we feel that there has been more than constructive receipt by decedent of the amounts evidenced by the notes. By a long standing regulation taxpayers are required to include in income notes received by them in payment for services to the amount of their fair market value. Regulations 94, article 22 (a)–4, which does not differ materially from prior regulations, provides as follows:

Notes or other evidences of indebtedness received in payment for services constitute income to the amount of their fair market value. A taxpayer receiving as compensation a note regarded as good for its face value at maturity, but not bearing interest, shall treat as income as of the time of receipt the fair discounted value of the note at such time. Thus, if it appears that such a note is or could be discounted on a 6 percent basis, the recipient shall include such note in his gross income to the amount of its face value less discount computed at the prevailing rate for such transactions. If the payments due on a note so accounted for are met as they become due, there should be included as income in respect of each such payment so much thereof as represents recovery for the discount originally deducted.

The theory of this and similar regulations is that the taxpayer receiving a note having a fair market value has actually received as income something of value equivalent, to the extent of that value, to cash, which is just as includible in his income as cash would be. *Estate of William B. Pratt*, 7 B. T. A. 621. Its receipt is not a fiction, to be used as a juridical tool for the accomplishment of an equitable result, but is a factual reality.

In the instant proceeding, when notes payable to decedent or his order on demand were issued, representing credits on account of salary payable to him, decedent had not only constructively received the income but must be treated as having actually received cash to the extent of their fair market value, which we have found to be the face amount thereof. *Estate of William B. Pratt*, *supra;* Roswell Magill on "Taxable Income", pp. 156, 157. The evidence discloses that the original negotiable demand notes were all issued prior to the taxable year, and, consequently, the amounts in question were properly in-

cludible in decedent's taxable income prior to the taxable period here before us.

Thus it is clear that decedent should have reported as income those credits in the years in which they first became subject to his unfettered command. This he did not do except in two instances, and those particular credits are not in issue. Since the amounts were properly taxable to the decedent prior to 1936 and all facts relative thereto were open to the Commissioner's agents prior to 1936, the petitioner argues that section 42 of the Revenue Act of 1936 has no applicability here. That section reads as follows:

SEC. 42. PERIOD IN WHICH ITEMS OF GROSS INCOME INCLUDED.

* * * In the case of the death of a taxpayer there shall be included in computing net income for the taxable period in which falls the date of his death, *amounts accrued up to the date of his death if not otherwise properly includible in respect of such period or a prior period.* [Emphasis ours.]

Whether or not petitioner is taxable depends upon the construction and effect of the italicized words of the statute. Thus it becomes necessary to ascertain the meaning of those words. The entire last sentence of section 42, set forth above, is relatively new. Section 42 of the 1934 and 1936 laws repeats the provision contained in the 1918 and subsequent laws that items of gross income shall be included in the return for the year in which the taxpayer receives them, unless, under his method of accounting, they should properly be accounted for as of a different period; and then adds the new matter set forth above. The section is one primarily concerned with accounting. The purpose behind and the reason for the addition of this new sentence to section 42 is probably best set forth in the report of the House Ways and Means Committee, 73d Cong. (1934), 2d sess., H. Rept. 704, p. 24, wherein it is stated that the courts have held that income accrued to a decedent on the cash basis prior to his death is not income to the estate, and under the law as it then existed, unless such income be taxable to the decedent, it would escape income taxation altogether. The Committee reported that section 42, therefore, had been drawn to require the inclusion in the income of a decedent of all amounts accrued up to the date of his death regardless of the fact that the taxpayer may have kept his books on the cash basis. Since no further purpose is attributed to the proposed addition in the subcommittee reports or the reports of the Senate Finance Committee or the Conference Committee, we conclude that the new matter was intended to apply to only one situation, that is, where income was accruable in the broad sense of the word by a decedent, who was on a cash basis, prior to his death, but was reduced to possession only after his death. Our interpretation of this section is substantiated by the words of the

section itself: "if not otherwise properly includible in respect of such period or a prior period."

Respondent argues that the rationale of *Helvering* v. *Enright*, 312 U. S. 636, is that the intention of Congress in enacting section 42 was "to reach all income earned during the life of a decedent that would otherwise escape the income tax," citing *Helvering* v. *McGlue*, 119 Fed. (2d) 167. The interpretation placed upon this quotation is unwarranted. When properly construed, in the light of its context, the words of the court, *supra*, should read "all income earned during the life of a decedent but not received by him * * *."

The words of the section itself preclude such an interpretation. It refers only to "amounts accrued." Obviously, amounts received are not "amounts accrued." Here, as we have shown, decedent actually received the items of income in years prior to his death. Section 42 further limits its application to "amounts accrued * * * if not otherwise properly includible in respect of * * * a prior period." As we have shown, the items of income here involved were properly includible in decedent's income in periods prior to the taxable period in which the date of his death fell.

Where the words of a tax statute limit its applicability it can not be argued that untoward circumstances make it applicable to the specific circumstances under which the lawmakers provided that it should be impotent.

There is a further point of controversy between the parties. The Commissioner included the amount of $35,707.04 in the decedent's income tax return for the taxable period before us as representing the total of salary and interest credited to decedent on the company's books on his death which had not been previously included in taxable income of the decedent. Petitioner claims that the total amount of salary and interest credited to decedent on the company's books at his death which had not been previously included in income of decedent is not $35,707.04 but $31,456.71. We have concluded from the evidence that the total amount credited to decedent by the company on his death was $51,974.06, of which amount $1,500 was inherited by decedent and $3,096.68 represented decedent's share in a certain bond issue which was transferred to the company. It appears that the respondent does not seek to include these latter two amounts within the unreported income claimed to give rise to the asserted deficiency, for respondent's brief states that the issue involves only accrued salary and interest. The parties have agreed that income tax has already been paid on salary and interest in the amount of $15,920.67, included in the total amount credited to decedent at the time of his death. The bookkeeper for the company having testified

that these were the only credits outstanding in decedent's favor on the company's books at his death, we conclude that respondent's total is erroneous and accept the figures as proven by petitioner and set forth in our findings of fact. Since we have already determined the law to be in petitioner's favor, however, this rejection of respondent's determination is of no importance.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

STERNHAGEN, ARUNDELL, BLACK, MELLOTT, and OPPER dissent.