Estate of Humphrey J. Lynch, Deceased, The County Trust Company and Mary A. Fleming, Executors v. Commissioner.
Estate of Lynch v. Commissioner
Docket No. 2302.
United States Tax Court
1944 Tax Ct. Memo LEXIS 101; 3 T.C.M. (CCH) 1011; T.C.M. (RIA) 44311; September 29, 1944
*101 Monroe J. Cahn, Esq., for the petitioners. Lawrence F. Casey, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in the income tax of the decedent in the amount of $484.21 for a period in 1938 ending January 24, the date of decedent's death. The primary issue involved is whether the petitioners erred in failing to include in the return an amount of $5,000 representing legal fees owing to decedent at the time of his death. Findings of Fact The decedent, Humphrey J. Lynch, a lawyer residing at White Plains, Westchester County, New York, died January 24, 1938. Mary A. Fleming, executrix under his will, filed with the Collector of Internal Revenue for the 14th district of New York an individual income tax return for the decedent's estate for the calendar year 1938, ending January 24 of that year. The return was on the cash receipts and disbursements basis, which basis had been used by decedent at all times prior to his death. During 1931, the decedent, as legal counsel for Marguerite H. Lynch, Elizabeth F. Lynch, and Anna L. Lynch, had prosecuted claims in their behalf against the Estate of John H. McArdle, deceased, *102 in the Surrogate's Court of Westchester * County, New York. On October 30, 1931, decedent succeeded in obtaining for them, from the Surrogate, a decree of settlement allowing claims totaling $56,160. Interest on the claims and some other claims which had been made were disallowed. On November 16, 1931, Freda Rosenblum, an attorney employed by the decedent, wrote and mailed a letter to the Lynch sisters informing them that an assignment in the amount of $7,000 of the money due them by virtue of the decree against the McArdle estate would be acceptable by the decedent in payment of his fee and it was stated that $5,000 was for services already rendered while the remaining $2,000 was to be compensation for work connected with an appeal which the decedent was contemplating bringing in behalf of his clients from the disallowance of interest and other claims by the Surrogate. The assignment, which was non-interest-bearing, was executed by the Lynch sisters on November 18, 1931. The decedent, for his clients, the Lynch sisters, on November 30, 1931, filed in the Surrogate's court a notice of appeal from that portion of the decree of October 30, 1931, which disallowed the interest and other *103 additional claims against the Estate of McArdle. In addition, on December 1, 1931, Mary E. Roche and Helen Abbey, devisees under the Will of McArdle, filed notice of appeal in the Surrogate's Court of Westchester County from the Surrogate's decree of October 30, 1931, allowing the claims of the Lynch sisters. Both of these notices of appeal were ultimately withdrawn. In the decree of October 30, 1931, the Surrogate's Court found the value of the assets of the McArdle estate, based on an appraisal made at or about the time of McArdle's death, January 1928, to be $400,920.10 and the liabilities of the estate including the claims established by said decree to be $139,780.00. In that decree the Surrogate ordered that the various assets of the estate be held subject to the further order of the court. Complete distribution of the estate and payment of the said Lynch claims did not take place until 1940, or approximately two years after the death of the decedent. The delay in distribution and payment of claims was occasioned by conflicting claims of several of the claimants for priority in distribution; by the assertion of further claims against the estate based on assessments against National *104 Bank stock, formerly an asset of the estate; and by the fact that the assets of the estate were not in a liquid condition but were invested in real estate and securities. The decedent did not report the receipt of the assignment as income in his tax return for the calendar year 1931 or for any subsequent year. The respondent has determined that the sum of $5,000 earned by decedent in 1931, at which time he accepted from his clients a partial assignment of a claim which remained unpaid at the date of death and which was never reported by decedent who was on a cash receipts basis of accounting, was includible as income for the period ending with decedent's death. Opinion ARUNDELL, Judge: The question presented is whether or not the assignment in 1931 of a portion of the Surrogate award in payment for decedent's services constituted income to him in that year. Apparently he did not so regard it, for he did not include it in his gross income for that or any other year. His estate, however, now claims that it was properly includible in income in 1931 on the authority of article 53, Regulations 74, [1] and thus seeks to avoid taxation of the amount in the year of his death under section *105 42 of the Revenue Act of 1938. [2]
The evidence shows that decedent's clients, the Lynch sisters, were unable to pay him for his legal services in 1931, and, in lieu of cash, he accepted on November 18, 1931, the non-interest-bearing assignment of a portion of their award against the McArdle Estate. A that time the assets of the McArdle Estate consisted of real estate and securities not susceptible of liquidation. They were, furthermore, subject to an order of the *106 court that they be held until further direction from the court. On November 30, 1931, the Lynch sisters, through decedent, filed a notice of appeal from so much of the Surrogate decree as disallowed their claim for interest and other claims, and, on December 1, 1931, certain devisees of the McArdle Estate appealed from the Surrogate decree in so far as it allowed the Lynch claims. Although both of these appeals were subsequently abandoned, it is not made to appear when this took place. Due to the conflicting demands of the various claimants for priority in distribution, to the assertion of further claims against the estate based upon assessments against certain national bank stock owned by the estate, and to the fact that the assets of the estate were not in a liquid condition, payment of the Lynch award was not made until 1940. Article 53 of Regulations 74 states that where services are paid for in property, the property is to be included in income to the extent of the fair market value thereof; and that in the absence of contrary evidence, the fair value of the property will be presumed to be equal to the price for which the services were rendered. Petitioner argues that the assignment *107 of a part of the Surrogate award constituted a payment in property and that the fair value thereof must be presumed to have been at least $5,000. The conclusion urged is that the assignment was income to the decedent in 1931 and could not properly be taxable in the year of his death. Without questioning the applicability of the presumption of article 53 to a case such as this, we think it must be obvious from the evidence that the non-interest-bearing assignment, hedged as it was in the uncertainties of litigation still in progress and dependent for satisfaction on the direction of the Surrogate and the liquidation of the estate, had a dubious market value. The theory of article 53, Regulations 74, and similar regulations, is that the taxpayer, receiving in return for his services property having a fair market value, "has actually received as income something of value equivalent, to the extent of that value, to cash, which is just as includible in his income as cash would be." Estate of George H. Letz, Sr., 45 B.T.A. 1011. Nothing in this record shows what, if any, the market value of the assignment was at the time of the receipt or at any subsequent *108 time prior to the death of decedent. As stated in William J. Kyle, 15 B.T.A. 1247, affd. 43 Fed. (2d) 291, certiorari denied 282 U.S. 896: * * * it may be pointed out that notes so held to be income are different in some material respects from judgments. They are negotiable and frequently pass from hand to hand. Generally they can be readily discounted and in the hands of a bona fide holder are free from defenses which the maker may have against the original payee, whereas the assignee of a judgment takes it subject to all the defenses that existed against it in the hands of the assignor. * * * Upon the evidence we are unable to find that the assignment of a part of the award had any market value in the year received or at any time prior to the death of the decedent. Therefore, we hold that the sum of $5,000 was properly includible in the return for the period January 1 to January 24, under section 42 of the Revenue Act of 1938. Decision will be entered under Rule 50. Footnotes
1. Art. 53. Compensation paid other than in cash. - Where services are paid for with something other than money, the fair market value of the thing taken in payment is the amount to be included as income. If the services were rendered at a stipulated price, in the absence of evidence to the contrary such price will be presumed to be the fair value of the compensation received. * * * ↩
2. Sec. 42. Period in Which Items of Gross Income Included. The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. * * *↩