The Saint Denis Securities Company, Inc. v. Commissioner.
St. Denis Sec. Co. v. Commissioner
Docket Nos. 36486, 55213.
United States Tax Court
T.C. Memo 1957-247; 1957 Tax Ct. Memo LEXIS 5; 16 T.C.M. (CCH) 1138; T.C.M. (RIA) 57247; December 31, 1957
*5 In 1947 petitioner held property subject to the debts of its president, who was adjudged bankrupt. Petitioner paid to the trustee in bankruptcy $7,929.02. Held: Such payment was for the purpose of protecting petitioner's title to the property and as such was in the nature of a nondeductible capital expenditure. Held further: 1. Useful life and basis of petitioner's brick veneer building, furniture and fixtures determined. 2. Rental income for 1947, gain from sale of land in 1948, and charitable deduction for 1949 determined. 3. Petitioner did not realize gain from sale of land in 1947. 4. Petitioner did not sustain an allowable bad debt or business loss in 1947 in the amount of $750. 5. Petitioner in 1947 did not sustain additional allowable expenses for roof repairs and painting in the amounts of $265 and $318.50, respectively. 6. Respondent did not err in disallowing petitioner's claimed deduction in 1950 for repairs in the amount of $764. 7. Respondent correctly determined that $1,863.70 of petitioner's claimed deduction for "repairs" in 1951 was for capital expenditures. John S. Pickett, Sr., Esq., John S. Pickett, Jr., Esq., and James W. Jones, Jr., Esq., 200 Third Street, *6 Natchitoches, La., for the petitioner. James F. Hoge, Jr., Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in the income tax of petitioner as follows: 1947
$ 937.09
1948
1,038.80
1949
195.05
1950
259.35
1951
1,693.65 In an amended answer the respondent claimed an additional deficiency with respect to the year 1947 in the amount of $838.53. At the hearing and/or on brief, petitioner conceded certain issues, including: (1) A claimed deduction in the amount of $244.58 on its 1947 return for Federal income taxes paid on a prior year's tax liability; (2) A claimed deduction in the amount of $618.40 for state and city taxes paid in 1947, but now admitted to have been included in its total operating expenses for 1947 and therefore a duplication; (3) Its plea of limitations with respect to 1947 as to which respondent, in his answer, pleaded the execution of timely waivers, petitioner filed no reply, and this Court, on February 13, 1952, entered an order taking such affirmative allegations as true; (4) Mathematical errors in the return for 1948 (Ex. B-16) in the total amount of $1,500.30, consiting of an understatement of "total *7 income" in the amount of 50(, and an overstatement of "total deductions" in the amount of $1,499.80. Respondent, on brief, has conceded the issues raised in his Second Amendment to Answer relating to additions to tax under sections 291(a) and 293(a) of the Internal Revenue Code of 1939. For completeness and use in the computations to be made under Rule 50, it should also be noted that no issue is presented for our determination under the allegations contained in Articles 4(e) and 5(c), or under Article 5(b) of the petition, relating to: (1) $3,600 which petitioner alleged it received as rentals on oil and gas leases during 1947; and (2) $200 which petitioner alleged it received upon the sale of a right of way to the Tennessee Gas Transmission Co., in 1947. The receipt of such items and their includability in petitioner's gross income for 1947 was admitted by respondent in his Answer and Amended Answer. The issues remaining for decision are as follows: 1. Whether respondent erred in disallowing a deduction in the amount of $7,929 claimed as a business expense incurred in 1947. 2. Whether respondent erred in his determination of the allowable depreciation on petitioner's brick veneer *8 building during the period in issue. 3. Whether, in 1947, petitioner received additional unreported gain from the sale of land in the amount of $1,993. 4. Whether respondent erred in determining that petitioner, in 1948, realized a larger gain from sale of land than the reported by petitioner. 5. Whether, in 1947, petitioner sustained an allowable bad debt or business loss in the amount of $750. 6. Whether respondent erred in disallowing a portion of petitioner's claimed deduction for contributions in 1948. 7. Whether, in 1947, petitioner incurred additional allowable expenses for roof repairs in the amount of $265. 8. Whether, in 1947, petitioner incurred additional allowable expenses for painting in the amount of $318.50 9. Whether, in 1947, petitioner incurred operating expenses in addition to the amount claimed on its return. 10. Whether respondent erred in determining that petitioner understated rental income in 1947. 11. Whether respondent erred in disallowing petitioner's claimed deductions for repairs in 1950 in the amount of $764. 12. Whether respondent erred in determining that certain deductions claimed as repairs to floors and furniture in 1951 were nondeductible capital *9 expenditures. 13. Whether respondent erred in disallowing a portion of the claimed depreciation with respect to furniture and fixtures during the period in issue. Findings of Fact The petitioner was incorporated on December 27, 1943, under the laws of the State of Louisiana with its principal office in Natchitoches, Louisiana. Petitioner's income (or income and declared value excess profits) tax returns were prepared according to the cash basis and such returns for the calendar years in issue were filed with the collector of internal revenue for the district of Louisiana. In 1936, the Central Securities & Title Co., Inc. (hereinafter called Central) acquired a certain lot in the City of Natchitoches, Louisiana. Subsequently a brick veneer building was constructed thereon. Additional construction has continued at intermittent intervals up to and during the period in issue. In 1940, Central was liquidated and the undivided interest in the aforementioned lot and building, together with other real estate and personal property held by Central, was distributed to its shareholders as follows: Name
Interest
Ernestine Cook
175/195
James Lee Jones
10/195
J. D. Smith
10/195 After the liquidation of *10 Central, James Lee Jones and J. D. Smith transferred to Ernestine Cook their 20/195 interest in the property for a recited consideration of $1,000. In July 1943, Ernestine Cook executed a deed purportedly transferring to James Lee Jones a 1/2 interest in all of the property distributed by Central in liquidation for the recited consideration of $5,000. On December 27, 1943, James Lee Jones and Ernestine Cook each executed deeds purportedly transferring to petitioner their respective undivided 1/2 interests in the assets distributed by Central on liquidation. The petitioner was organized with an authorized capital of $50,000, consisting of 500 shares each having a par value of $100. Such shares were subscribed for as follows: Number
Subscriber
of Shares
Ernestine Cook
245
James Lee Jones
245
James W. Jones, Jr.
5
Mrs. James W. Jones, Jr.
5 James W. Jones, Jr., was president of petitioner. James W. Jones, Jr., filed his petition for a voluntary adjudication and was adjudged a bankrupt on August 23, 1943. On July 13, 1945, an action was filed in the United States District Court for the Western District of Louisiana by the trustee in bankruptcy of James W. Jones, Jr., against James W. Jones, Jr., *11 and others, including Ernestine Cook, James Lee Jones, and petitioner herein. See Gayle v. Jones, et al., 74 Fed. Supp. 262. The principal claim against James W. Jones, Jr., the collection of which was the chief reason for the trustee bringing such action, was by the State of Louisiana for a cost bill of between $4,000 and $5,000 incurred in a proceeding for the removal of James W. Jones, Jr., from the office of Judge of the Tenth District of the State of Louisiana. See Stanley v. Jones, 201 La. 549, 9 So. 2d 678. The bankruptcy proceedings mentioned above culminated in a decision by the District Court that for the purposes of bankruptcy many of the transfers involving Central, petitioner, and relatives of James W. Jones, Jr., including those mentioned above, were simulations and that the property involved, including the capital stock of petitioner, was the property of James W. Jones, Jr. A decree was entered reflecting that decision and it was adjudged that the property involved was held subject to the indebtedness of James W. Jones, Jr., in the amount of $12,929.02. Subsequently the petitioner, by resolution of its board of directors, agreed to pay $7,929.02 to the trustee in bankruptcy *12 in partial satisfaction of the judgment. James W. Jones, Jr., agreed to discharge the $5,000 balance. Subsequently two cashier's checks in the amounts of $7,929.02 and $5,000, respectively, were purchased by James W. Jones, Jr., and accepted by the trustee in satisfaction of the judgment. The petitioner reported the payment of $7,929 as business expense on its income tax return for 1947. The respondent disallowed such claimed expense. The value of the brick apartment building at the time of the liquidation of Central and its basis in the hands of the distributees amounted to $11,000. Subsequent to the distribution by Central and prior to January 1, 1944, capital expenditures in the amount of $6,500 were incurred in making additions to the apartment building. During that period the allowable depreciation on the building amounted to $1,166.11. Petitioner's basis in the property at the time of its acquisition amounted to $16,333.89. From January 1, 1944, up to and during the period in issue the following amounts were expended in acquisition of capital improvements for the building: Year
Amount
1948
$2,410.20
1950
5,683.82
1951
6,168.62
The cost of furniture and fixtures owned by petitioner at *13 the beginning of the period in issue amounted to $3,025. On July 1, 1951, petitioner acquired additional furniture and fixtures in the amount of $1,417.70. Petitioner's income from rentals for 1947 amounted to at least $7,249.64. During 1946 the petitioner executed deeds and conveyed real property as follows: Description of
Date
Property
Consideration
Vendee
6/ 8/46
Lot 5, Block 4
$ 500.00
Olan A. Jones
6/ 8/46
Lots 1-7, Block 1
2,068.00
R. L. Jones, Sr.
6/ 8/46
Lot 4, Block 4
500.00
R. L. Jones, Sr.
7/24/46
Lot 5, Block 3
500.00
J. C. Bond
8/30/46
Lot 2, Block 3
425.00
Thadis B. Jones
9/25/46
Lot 3, Block 3
500.00
William F. Ebert
11/ 7/46
17.82 acres
4,000.00
Monroe B. Martin and
Euhel D. Martin The petitioner reported such sales on its income tax return for 1947 and reported a taxable gain thereon of $1,000. The petitioner realized no gain from such sales of land in 1947. Petitioner in 1947 did not incur expenses for repair of roof in addition to amounts allowed by respondent. Petitioner in 1947 did not incur expenses for repainting apartments in addition to amounts allowed therefor by respondent. Petitioner did not incur operating expenses in 1947 in excess of the amount allowed by respondent. On its income tax *14 return for 1948 the petitioner reported the following sales of land: Description
Date
Gross Sales
Cost or
Gain or
Vendee
of Property
Acquired
Price
Other Basis
Loss
Tennessee Gas
1944
$ 400
$ 200
$200
Transmission Co.
William Barbo
26 acres
1,200
1,040
160
Thadis Jones
103 acres
1,540
1,400
150 *
William Ebert
12 acres
600
500
100
During 1948 petitioner actually made the following sales of land: Date
Sales
Description
Purchaser
Acquired
Price
Plot of Ground
TennesseeGas Transmission Co.
12/43
$ 425
260 acres
William Barbo
12/43
1,250
103 acres
Thadis Jones
12/43
1,545
12 acres
William Ebert
12/43
600
2 lots
Elmer and W. L. Cox.
12/43
900 The above properties had a zero basis when sold, the cost basis thereof having been allowed upon disposition of parts of the original tract in previous years. Petitioner's "operating expenses" for 1948 and 1949 amounted to $4,311.72 and $1,488.61, respectively. Petitioner in 1950 did not incur allowable expenses for repairs in excess of the amount of such expenses allowed by respondent. On its 1951 income tax return petitioner claimed a deduction for repairs in the amount of $3,485.39. To the extent of $1,863,70 thereof such amount represents capital expenditures. In 1950 and 1951 *15 petitioner had, among others, the following items of income and expense: 1950
1951
Income
Expense
Income
Expense
Rentals
$3,458.00
$4,360.14
Easements sold
360.00
Operating Expense
$3,293.26
$2,416.87
Repairs to Building
1,621.69
The useful life of the apartment building at the time of its acquisition by petitioner was 25 years. The useful life of the furniture and fixtures at the time of their acquisition by petitioner was 10 years. Opinion Most of the issues in this case involve only the resolving of disputed factual questions. With respect to several of these issue petitioner has placed in evidence portions of its ledger accounts and the selfserving testimony of its president as the sole support of its position. We have examined such ledger accounts and testimony carefully. The ledger accounts were not substantiated by any other documentary evidence, but were alleged to have been maintained under the supervision of petitioner's president, James W. Jones, Jr. When asked to identify various entries, Jones' answers were generally unsatisfactory and no genuine attempt of corroboration was made. Also, the appearance of such accounts is not persuasive of their authenticity. Many of the ledger sheets, *16 although they purportedly covered a period of several years and constituted the books of original entry, had the appearance of having been prepared at or about the same time. They also contained many mathematical errors. ISSUE I. The petitioner claimed as a business expense on its 1947 income tax return the amount of $7,929 which it had characterized on the return as the amount "paid out to prevent property being sold by Trustee." This payment was made subsequent to a settlement in the bankruptcy proceeding involving petitioner's president who was the bankrupt. The respondent contends that such payment to the trustee in bankruptcy merely operated as a partial discharge of an obligation of petitioner's president and as such was not an ordinary and necessary business expense. Petitioner argues on brief that the payment was necessary to prevent the sale and loss of title since the court in the bankruptcy proceeding had determined that the real and personal property purportedly owned by the petitioner was, for the purposes of bankruptcy, the property of the bankrupt, petitioner's president. Since these costs were incurred by petitioner in acquiring or defending the title to the property, *17 they are capital expenditures to be added to the cost of the property and are not deductible as ordinary and necessary business expenses under section 23(a) or as business losses under section 23(f) of the Internal Revenue Code of 1939. See Samuel Cohen, 24 T.C. 957. Such additional cost shall be treated as an addition to basis and taken into consideration in the Rule 50 computation involved in the subsequent issues, by allocating such additions to basis to each of the properties held by petitioner in an amount which bears the same proportion to the payment to the trustee as the value of each of the properties bears to the value of the entire property held by the petitioner at the date of such payment. Cf. Regs. 111, sec. 29.23(1)-4. ISSUE II. The amount of depreciation allowable to the petitioner on the apartment house depends upon the determination of two disputed facts, the useful life of the property at the time of its acquisition by the petitioner and the basis of the property at such acquisition date and during the years in issue. With regard to the first disputed fact, petitioner introduced testimony of two witnesses, one of whom was an architectural engineer who drafted the *18 plans for this building and observed its construction. He testified that the building was of four inch brick veneer; that the soil on which it was constructed has a tendency to expand and contract and because of this condition to cause the walls of buildings to crack; that in his opinion buildings of this type built thereon, and this particular building, do not have a useful life of more than 20 to 25 years without major repairs. Respondent offered no expert testimony of his own and we have accordingly found the useful life of the building involved to be 25 years. With respect to the second disputed fact, the respondent determined preliminarily that the basis of the building when acquired by petitioner amounted to $16,333.89. In arriving at this amount respondent determined that the basis of the building was established in the hands of the transferors upon the liquidation of Central on October 30, 1940, in accordance with sections 112(b)(5) and 113(a)(8) of the Internal Revenue Code of 1939. The consideration recited in the deeds from the transferors, James Lee Jones and Ernestine Cook, to petitioner was not considered as controlling on the ground that the fair market value of the *19 property was not established by the recited consideration in such deeds between members of the same family and an entity controlled by the family. To this it may also be added that the District Court, in Gayle v. Jones, et al., 74 Fed. Supp. 262, found not only these deeds but the deed from James Lee Jones and J. D. Smith to Ernestine, and the deed from Ernestine to James Lee Jones, to be sham and simulations and the considerations recited to be fictitious. Respondent assigned $11,000 as the value of the building on October 30, 1940, this being the value agreed upon in the settlement of the tax liability of petitioner for the taxable year 1944, in a previous proceeding before this Court (Docket No. 21254) in which decision was entered on May 2, 1950. From this agreed value of $11,000, respondent deducted depreciation in the amount of $1,161.11 for 38 months (October 30, 1940 to December 31, 1943) and added $6,500 fro additions and improvements during the same period. The petitioner offered no evidence to show the basis of the building other than the self-serving testimony of its president. As such it has failed to sustain its burden of proof. With respect to alleged capital expenditures *20 made to the building subsequent to its acquisition, evidence in the form of petitioner's ledger sheets was not sufficient to determine whether such alleged expenses were incurred in making capital improvements or ordinary business expenses. Therefore, we do not disturb respondent's determination. However, the basis must be adjusted to properly reflect the payment to the trustee in bankruptcy. ISSUE III. In an amended answer the respondent claimed that in 1947 the petitioner received additional unreported gain from the sale of land in the amount of $1,993. Since this was new matter pleaded in the answer, the burden of proving such rested with the respondent. Rules of Practice, Tax Court of the United States, Rule 32. Pursuant to leave granted by the Court, over the objection of respondent, the petitioner filed deeds after the hearing indicating that such sales in issue were consummated in 1946, and as such, no gains from such sales were includible in the gross income of the petitioner for 1947. We have accordingly found that the petitioner realized no gain with respect to such sales in 1947. ISSUE IV. With respect to the sales of land in 1948 respondent has shown which particular sales *21 occurred through the testimony of the examining agent and through the deeds placed in evidence by petitioner. Petitioner apparently does not dispute respondent's contention that such sales occurred during 1948, but does dispute the respondent's determination that the petitioner had no allowable basis in the land involved in such sales. Petitioner also contends that to the extent notes were received as consideration for such sales such amounts are not includible in determining gain realized during 1948. The respondent determined that the petitioner had completely exhausted the basis of the land which was sold in 1948 by offsetting such basis against sales in prior years. In support of its contention that the basis of the land was substantially in excess of that allowed by respondent, petitioner placed in evidence copies of deeds of such land to the petitioner. Such deeds recited large considerations therefor in the form of stock. It is clear from the record of the bankruptcy proceeding involving petitioner ( Gayle v. Jones, et al., supra) that these deeds were merely part of a group of sham transactions and that the consideration recited therein is entitled to no weight. Respondent *22 properly included the value of the notes in computing the gain realized on such sales. Estate of William B. Pratt, 7 B.T.A. 621; Estate of George H. Letz, Sr., 45 B.T.A. 1011. No other evidence being presented, the respondent's determination, with appropriate adjustments heretofore described, must be sustained. ISSUE V. With respect to petitioner's claim in the pleadings that in 1947 it suffered a bad debt or business loss amounting to $750, no evidence was presented at the hearing concerning such alleged loss and it has accordingly been disallowed. ISSUE VI. Petitioner claimed deduction for charitable contributions in 1948 in the amount of $100. Respondent disallowed all in excess of $48.89 as being more than 5% of adjusted net income. Section 23(q). Internal Revenue Code of 1939, as amended, provides that the deduction for charitable contributions by a corporation is limited during any year "to an amount which does not exceed 5 per centum of the taxpayer's net income as computed without the benefits of this subsection." The amount allowable to the petitioner in 1948 as a deduction for charitable contributions shall be determined in the Rule 50 computation in accordance with the *23 provisions of such section. ISSUE VII. In its petition, petitioner claimed an additional deduction for the year 1947 in the amount of $265 for labor expenses incurred in repairing the roof of the building. At the hearing, petitioner's president admitted that there were no receipts to indicate such expense and when asked by the Court to point out such item in the books and records of petitioner he replied, "I can't. It must be a mistake." Therefore, we have disallowed such claim. ISSUE VIII. In its petition, petitioner claimed as an additional expense in 1947 the amount of $318.50 incurred as painting costs. Petitioner's president could not point out where such items were entered on the books nor was any other evidence introduced to substantiate this claim. It has accordingly been disallowed. ISSUE IX. On its return for 1947 petitioner claimed a deduction for operating expenses in the total amount of $4,984.78. No adjustment as to this item was made by respondent in his determination of the deficiency for this year. Although it is not clear, as appears from Article 6(b) of the petition, petitioner may be claiming an additional deduction for operating expenses for the year 1947 in the *24 amount of $4,740.20. Petitioner's evidence is not sufficient to establish it incurred operating expenses in excess of the amount claimed on its return. Accordingly, we hold petitioner is not entitled to a deduction for operating expenses for the year 1947 in excess of the amount allowed by respondent. ISSUE X. The respondent determined that the rental received by petitioner in 1947 amounted to $7,249.64. The petitioner reported rental income of $5,003.16. In support of his position, respondent's agent testified that the determination was based upon his examination of the petitioner's books which had shown such amount to have been received. At the hearing, petitioner's ledger sheets of its rental account for February through December, 1947, were placed in evidence. These accounts reveal by petitioner's own computation that the rental income for such eleven months was approximately $6,600. No reason was forthcoming for the failure to produce the ledger account for January 1947. Since by petitioner's own evidence the rental income averaged approximately $600 per month, or $7,200 per year, and since no other evidence was introduced tending to refute the respondent's determination, it has *25 accordingly been sustained. ISSUE XI. On its income tax return for 1950 petitioner claimed as a deduction for repairs the amount of $764. This amount was disallowed by the respondent for lack of substantiation. No evidence was introduced at the hearing with respect to this item and accordingly respondent's determination is sustained. ISSUE XII. In its income tax return for 1951, the petitioner claimed a total deduction for repairs in the amount of $3,485.34. The respondent determined that of this amount, claimed expenditures of $449 and $1,414.70, representing cost of replacing floors and cost of furniture and fixtures respectively, were not deductible as ordinary and necessary business expenses but were capital expenditures. We sustain the respondent's determination. It is fundamental that respondent's determination will be sustained unless refuted by competent evidence. Cost of replacing floors has generally been held to be a permanent improvement and capital in nature. See Phillips & Easton Supply Co., 20 T.C. 455; Parkersburg Iron & Steel Co. v. Burnet, 48 Fed. (2d) 163, affirming 17 B.T.A. 74. This principle is applicable here. Under cost of repairs for furniture and fixtures *26 for which the petitioner claimed a deduction the following items are typical: Replacing 130 window shades
$390.00
Exchanging 22 floor rugs
194.70
Exchanging 4 cook stoves
300.00
Exchanging 5 mattresses
150.00 These were clearly purchases of new equipment with a useful life of more than one year and accordingly must be capitalized. Crystal Block Coal & Coke Co., 15 B.T.A. 600. ISSUE XIII. The respondent adjusted the petitioner's claimed allowance for depreciation of furniture and fixtures during the period in issue. The petitioner disputes respondent's determination to the extent that no allowance was made for alleged additional costs of furniture. In response to questions concerning records of the cost of such furniture, the petitioner's president replied, "No, we didn't keep anything on that. That was movable property. * * *" The uncorroborated self-serving testimony of petitioner's president was also offered to show the cost. However, his testimony at best was very confused. We hold that the petitioner has failed to prove by credible evidence that respondent's determination was in error and with the adjustments described to reflect the bankruptcy costs it is accordingly sustained. Decisions *27 will be entered under Rule 50. Footnotes
*. $10 mathematical error.↩