Bank of Houston v. Commissioner.
Bank of Houston v. Commissioner
Docket No. 77068.
United States Tax Court
T.C. Memo 1960-110; 1960 Tax Ct. Memo LEXIS 175; 19 T.C.M. (CCH) 589; T.C.M. (RIA) 60110; May 31, 1960
*175 Where petitioner sought to deduct as ordinary and necessary business expenses the cost of certain items of work incidental to a general plan of rehabilitation, improvement, and modernization of its bank building, held, none of the expenditures incidental to the over-all project represented ordinary and necessary expenses of petitioner's business and such expenditures should be capitalized and recovered during the remaining useful life of the building. *176 Charles E. Dapron, Esq., 506 Olive Street, St. Louis, Mo., for the petitioner. Claude R. Sanders, Esq., and James H. Martin, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in income tax for the taxable year 1954 in the amount of $5,888.55. The question is whether the expenditures of $11,511.54 in 1954, or any part thereof, is deductible as an ordinary and necessary business expense under section 162(a) of the Internal Revenue Code of 1954. Findings of Fact Some of the facts were stipulated and are incorporated herein by this reference. The Bank of Houston, hereinafter referred to as petitioner, is a Missouri corporation engaged in the banking business in Houston, Missouri. Petitioner reports its income upon a cash basis and files its income tax returns on a calendar year basis. The return for the taxable year 1954 was filed with the district director of internal revenue at Kansas City, Missouri. The building owned and occupied by petitioner was constructed in 1906 or 1907. It has been in use as a bank since 1908 or 1909. Petitioner acquired the building in 1931. *177 The building has two stories, with a partial basement. Petitioner's business is conducted on the first floor, and the second floor is rented to others. The structure has a stone foundation, 12-inch brick or masonry walls, wooden double-hung sashes, and built-up composition roof. Two sides of the building, from sidewalk to the top of the parapet wall, are completely exposed. The masonry is composed of "soft" brick and lime mortar. Such masonry is vulnerable to the elements and easily weathers and deteriorates. With proper maintenance the building might have been expected to have a total useful life of from 70 to 100 years. In 1954 the building was in a general state of disrepair. In late April or early May, 1954, the petitioner, through its officers, consulted Western Bank Contractors, Inc., hereinafter sometimes referred to as Western, a corporation specializing in contracting work for banking institutions, with reference to a general over-all plan of improvement and modernization. The president of Western made a personal inspection of the premises to formulate recommendations with reference to the plan. The inspection revealed the following: The window and door openings, or *178 the masonry openings which were encased with wood, were badly deteriorated. The soft brick had weathered severely. The lime mortar had broken down, and the downspouts were in very bad condition. The parapet wall and chimneys of the building were damaged. The brick corbelings surmounting the 16 windows on the exposed side of the building had deteriorated because of the eroding of the mortar and bricks. The plaster upon the interior walls was scarred and pocked, with some evidence of cracking. The floors of the bank quarters were sagging in some places, springing, or dished out, in others. The plumbing was old, but serviceable. These conditions had existed over a period of years. The building, when inspected, was, on the whole, still serviceable for the purposes used. It was in good structural condition, notwithstanding the disrepair. On May 7, 1954, petitioner's board of directors entered into a contract with Western whereby Western agreed "to accomplish the renovation and reconstruction of [the bank's] premises, in accordance with the plans and specifications heretofore and herewith presented by [Western]." Consideration for the contract, including two subsequent modifications, *179 was $45,467.84. The cost of the items in dispute here was included in this contract price. The specifications contained the following language: "Work necessary to repair or replace existing defective materials or conditions except to replace and make good, work disturbed in construction, shall be borne at the expense of the Owner." The sum of $11,511.54, claimed as ordinary and necessary expense and which was part of the amount paid to Western, was spent for the following purposes in the amounts shown. [1]
Repair of flooring - removal and re-
placing of various floor sections,
shoring, "scabbing" and leveling
as necessary by the application of
plastic compounds and leveling
sheets
$ 823.47
Electrical repairing - repairing and
replacing existing deteriorated wir-
ing to accommodate new system
475.48
Patching plaster - patching and re-
pairing existing plaster to receive
new wall treatment
946.49
Window repairs - removal of existing
exterior windows and doors, re-
pairing brick window openings and
replacing with new wood members
as necessary to receive new units
362.60
Repairing of outside walls - patching
and repairing brick and stucco for
waterproofing and preservation
4,831.48
Painting and decorating - painting
and addition of burlap and plastic
wall coverings on interior walls
2,030.69
Plumbing repairs - repairing of exist-
ing services, both waste and water,
relocation of air conditioner, dis-
mantling boiler, relocation of some
steam lines
411.54
Demolition and clean up - necessary
removal of existing condition in re-
pair of walls, floors, masonry,
removal of center wall in bank
vault, erection of temporary bar-
riers and closures during work in
progress to protect pedestrians and
employees
1,629.79
*180 The work above was provided for and carried out according to the contract specifications. The same basic structure existed after the performance of all of the work, including such items as were capitalized. The work for which the expenditures were made was pursuant to the general plan adopted by petitioner of reconditioning and improving the property as a whole. The plan rendered the building better suited to the purposes for which it was used, and the building's fair market value was increased. The total amount expended by petitioner for all work and repairs for the taxable year 1954 was $64,961.06. Of this amount, petitioner capitalized $53,304.23 upon its 1954 return. The balance, $11,656.83, was taken as an expense deduction for building repairs. Of the latter sum, $9,929.63 was attributed to work performed by Western. Petitioner now asserts that the amount of $12,693.07 was properly deductible for building repair and maintenance expense. This total is comprised of the *181 following: $11,511.54 (work performed by Western), $681.53 (miscellaneous expenses conceded by respondent), and $500 (architect's fee, not in dispute). Opinion VAN FOSSAN, Judge: The sole issue for consideration is whether certain amounts expended by petitioner as part of a general plan of reconditioning and improving the building constitute capital expenditures or ordinary and necessary business expenses. Petitioner conceded that the larger portion of the $64,961.06, expended during the taxable year 1954, represented capital expenditures, but contends that the sum of $11,511.54 is deductible under section 162(a) of the Internal Revenue Code of 1954. The question presented is one of fact, i.e., in reaching a decision in this area, the purpose of the work performed, the physical nature of the work, and the effect of the work must be considered. Home News Publishing Co., 18 B.T.A. 1008; Bloomfield Steamship Co., 33 T.C. 75, on appeal C.A. 5. Section 162(a) permits "all the ordinary and necessary expenses paid or incurred during the *182 taxable year in carrying on any trade or business" to be deducted from income for that year. Section 1.162-4, Income Tax Regs., states that "The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as an expense, * * *." Petitioner argues that the work did not add materially to the life of the building but instead served to maintain the property in a normal operating condition over its anticipated life. Petitioner further argues that the cost of work performed in the manner of this case must be capitalized only when the taxpayer fails to segregate ordinary expense items from the cost of items of a capital nature. Respondent argues that the expenditures in issue were part and parcel of a general plan of reconditioning and improving the property and, as such, constitute capital improvements. The earlier decisions lend support to petitioner's thesis that the cost of work, part and parcel of a remodeling project, should be capitalized only when the taxpayer fails to segregate "repair" items from "capital" items. See *183 Cotton Concentration Co., 4 B.T.A. 121; Joseph W. Woods & Sons Co., 8 B.T.A. 705; Federal-American National Bank, 9 B.T.A. 1043; Edwin Dumble Co., Inc., 9 B.T.A. 591. Some of these decisions made an allocation of the various items. See Foer Wall Paper Co., 9 B.T.A. 377; H. S. Crocker Co., Inc., 15 B.T.A. 175. However, the later decisions, beginning with I. M. Cowell, 18 B.T.A. 997, indicate that the distinction drawn in the early cases is no longer relied upon as the basis for decision. In Cowell, supra, the cost of the various items was segregated. Nonetheless, this Court stated (p. 1002): "To fix a door or patch plaster might very well be treated as an expense when it is an incidental minor item arising in the use of the property in carrying on business, and yet, as here, be properly capitalized when involved in a greater plan of rehabilitation, enlargement and improvement of the entire property." This Court recently stated in Bloomfield Steamship Co., supra (p. 34), that: " *184 Repairs incidental to capital expenditures for remodeling or renovation of the property are not deductible. Jones v. Commissioner, supra, [242 F. 2d 616 (C.A. 5)]; I. M. Cowell, 18 B.T.A. 997." Substantially the same principle was enunciated in Home News Publishing Co., supra; Maurice Cross, 24 B.T.A. 1079; Coca-Cola Bottling Works, 19 B.T.A. 1055; University National Bank, 21 B.T.A. 71; Ehrlich v. Commissioner, 198 F. 2d 158 (C.A. 1), affirming a Memorandum Opinion of this Court [10 TCM 744]; Ethyl M. Cox, 17 T.C. 1287. See, also, Buckland v. United States, 66 F. Supp. 681 (D.C.Conn.). Cf. Henry F. Cochrane, 23 B.T.A. 202; Evalena M. Howard, 19 B.T.A. 865; Alexander Sprunt & Son, Inc., 24 B.T.A. 599, modified 64 F. 2d 424 (C.A. 4). The distinction is expressed in the Regulations. When the work is incidental to keeping the property in ordinarily efficient operating condition, it is a repair, *185 and the cost is deductible as an expense. However, when the item is incidental to a general plan of rehabilitation, improvement, alteration, and modernization, the cost must be capitalized. Income Tax Regs., sec. 1.162-4. The expenditures involved herein were not made for incidental repairs but were part of an over-all plan for the general rehabilitation, restoration, and improvement of the old bank building. The work was carried out under a contract calling for such a project. Under the contract, incidental repairs were to be made at petitioner's additional expense. Here, however, all of the work was completed under the contract and the cost was included in the total over-all contract price. An examination of each item of the alleged repairs and a comparison of that item with the specifications reveal that the work was considered as part of the preparations for the remodeling project. A remodeling project, taken as a whole, is but the result of various steps and stages. In the preparation of the floors for the new floor covering, the specifications required that the nails should be set, joists sanded, plywood applied, and the floor shored and leveled. *186 These were steps to an end, viz., a new floor covering. The covering could not have been applied practicably without the preparation. Each phase of this preparation, removed in time and context, might be considered a repair item. The Code, however, does not envision the fragmentation of an over-all project for deduction or capitalization purposes. Similar observations could be made for all the items in dispute. The construction of a new building encompasses numerous steps, many of which, when viewed alone, might, in the everyday, commonly accepted sense, be considered repair items. But, taken as a whole, the cost of the construction is capitalized. Section 263(a)(1), Internal Revenue Code of 1954. This case is not distinguishable in principle from Jones v. Commissioner, 242 F. 2d 616 (C.A. 5), affirming 24 T.C. 563; Phillips & Easton Supply Co., 20 T.C. 455; Bloomfield Steamship Co., supra; California Casket Co., 19 T.C. 32. Beyond the discussion above, the alleged repair items involved here are, *187 of their own nature, capital items. Each of the items, except for demolition and clean-up, represented for the most part material additions and replacements which added to the value of the property and made it better suited for the purposes for which it was used. Ehrlich v. Commissioner, supra.The demolition and clean-up item was an integral part not only of the work in issue here, but also of work which petitioner has capitalized. As such, it is part of the costs to be capitalized. See H. S. Crocker Co., Inc., supra; First National Bank in Mobile, 30 B.T.A. 632; Harriet B. Borland, 27 B.T.A. 538; Fire Companies Building Corporation, 18 B.T.A. 1258, affirmed 57 F. 2d 943 (C.A.D.C.). See, also, Illinois Merchants Trust Co., Executor, 4 B.T.A. 103. We hold, therefore, that no part of the $11,511.54 expenditure represented ordinary and necessary expense of petitioner's business, and that such amount should be capitalized and recovered during the remaining useful life of the building through deductions for depreciation. Decision will be entered under Rule 50. Footnotes
1. Some of the repairs listed were subcontracted. The totals shown and the work outlined reflect the work of and cost of such subcontractors. Totals shown include the cost of labor and materials.↩